UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DENA MEDIALDEA, *et al.*,

    Plaintiffs,

    v.

LAW OFFICE OF EVAN L LOEFFLER PLLC, *et al.*,

    Defendants.

No. C09-55RSL

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

This matter comes before the Court on "Defendant Evan L. Loeffler and Law Office of Evan L. Loeffler, PLLC's Motion to Dismiss Claims and Parties Under Fed. R. Civ. P. 12(b)(6)," Dkt. #5. Plaintiffs Dena Medialdea and Tye and Jennifer Barringer have brought this action alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and Washington's Consumer Protection Act ("CPA"), RCW 19.86. For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

## II. DISCUSSION

**A. Background**

Plaintiffs allege in their complaint that in early 2008, Ms. Medialdea was sued for unlawful detainer in Snohomish County Superior Court. Compl., Dkt. #1, ¶ 5.1. Mr. Loeffler represented the plaintiff-landlord in that suit. Id. § 5. During the course of the litigation, Mr. Loeffler moved the court for reimbursement of fees and costs. Id. ¶¶ 5.2, 5.7, 5.18. The fees and costs included $500 in attorney's fees, $50 for service of process, and $582.06 in "other" costs. Id. ¶¶ 5.2, 5.7, 5.18. According to the complaint, Mr. Loeffler later admitted in a declaration that his actual fees were only $310, id. ¶ 5.5. The superior court denied Loeffler's requests for reimbursement of service of process and "other" costs. Id. ¶ 5.18.

Also in early 2008, the Barringers were sued in Snohomish County Superior Court for unlawful detainer and past rent due. Id. ¶ 6.1. Mr. Loeffler represented the plaintiff in that suit as well. Id. ¶ 6.1 The complaint demanded $140 for late fees, an amount allegedly "not allowed by law or contract." Id. ¶ 6.3. The person who served process on the Barringers was not registered as a process server in Snohomish County. Id. ¶ 6.6. During the course of the proceedings, Mr. Loeffler moved the court for reimbursement of a "service fee" of $49. Id. ¶ 6.10.

On January 14, 2009, Ms. Medialdea and the Barringers filed suit in federal court, claiming that defendants violated the FDCPA and the CPA during the course of the litigation over attorney's fees and costs. Defendants Loeffler and his law office now ask the Court to dismiss those claims pursuant to Fed. R. Civ. P. 12(b)(6).

**B. Analysis**

In a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the burden falls on the defendant to prove that the complaint fails to state a claim upon which relief can be granted. All factual

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS - 2

uncertainties in the complaint must be construed in the light most favorable to the plaintiff. In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996). The Court will dismiss only those claims for which it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief. Wyler Summit Partnership v. Turner Broadcasting Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). However, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

As a preliminary matter, defendant asks the Court to take judicial notice of prior proceedings in Snohomish County Superior Court. See Dkt. #5 at 2-3. In a motion to dismiss, courts consider "the complaint in its entirety, as well as other sources courts ordinarily examine . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 2509 (2007). Courts may take judicial notice of adjudicative facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), including "'proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.'" Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002) (quoting United States ex rel. Robinson Rancheria Citizens Council v. Borneo, 971 F.2d 244, 248 (9th Cir. 1992)).

Originally, defendant did not provide copies of the state court documents, nor was the state court record readily available through the Snohomish County judicial website. On June 4, 2009, the Court ordered defendant to produce the state court record, Dkt. #18, and defendant filed the relevant documents on June 10, 2009. Because the state court proceedings have a clear and direct relation to the matters at issue, the Court takes judicial notice of them.

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS - 3

**1. Fair Debt Collection Practices Act ("FDCPA")**

Plaintiffs claim that defendant violated §§ 1692e-1692f of the FDCPA. Compl. § 7. The FDCPA prohibits "abusive debt collection practices by debt collectors." 15 U.S.C. § 1692. Plaintiffs' claims allege that defendant "false[ly] represent[ed] . . . the character, amount, or legal status of a[] debt," 15 U.S.C. § 1692e(2)(A), see Compl. ¶¶ 7.2-7.3, 7.7, "false[ly] represent[ed] . . . any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt," 15 U.S.C. § 1692e(2)(B), see Compl. ¶¶ 7.2-7.3, "threat[ened] to take an[] action that cannot legally be taken," 15 U.S.C. § 1692e(5), see Compl. ¶¶ 7.5, 7.8, and "collect[ed] [] an[] amount . . . [that was not] expressly authorized by the agreement creating the debt or permitted by law," 15 U.S.C. § 1692f(1), see Compl. ¶¶ 7.10-7.12. Defendant makes three broad arguments in his defense. First, he contends that the fees and costs that he attempted to collect do not fall under the FDCPA's definition of "debt," 15 U.S.C. § 1692a(5). Dkt. #5 at 5-7. Second, he argues that the litigation privilege shields his activities from the FDCPA. Id. at 11. Third and finally, he argues that plaintiffs' specific claims fail to meet the pleading requirements dictated by Twombly. Id. at 4-5, 7.

    **a.**     **"Debt" under the FDCPA**

Defendant first argues that the FDCPA does not apply to litigation fees and costs because they do not qualify as "debts." Dkt. #5 at 5-7. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Defendant contends that legal motions and declarations are not consumer transactions, so any attorney's fees and costs arising from them are not debts. Dkt. #5 at 5-6. In response, plaintiffs argue that the consumer transactions in this case were the rental agreements between the plaintiffs and their landlords,

and the litigation fees and costs arose out of those agreements. Dkt. #13 at 3-5. Defendant replies that "[t]he requested fees were not related to rents or efforts to collect these rents." Dkt. #14 at 2.

The Court holds that the fees and costs do qualify as debts under the FDCPA. Under the plain meaning of the FDCPA's definition of "debt," fees and costs that an attorney charges as a result of his litigation efforts to enforce a rental agreement do "arise out of" that rental agreement, however indirectly. The FDCPA does not indicate that a debt must arise *directly* out of a consumer transaction. If that were the case, then non-litigation collection fees charged on top of other debts would not be subject to the FDCPA, since collectors could simply argue that the fees arose out of their collection services rather than out of the underlying consumer transactions. Collection fees and costs are well within the reach of the FDCPA, however. See, e.g., Seeger v. AFNI, Inc., 548 F.3d 1107 (7th Cir. 2008) (holding that defendant violated FDCPA by charging unauthorized collection fees); F.T.C. v. Check Investors, Inc. 502 F.3d 159, 174 (3d Cir. 2007) (holding that defendant was potentially liable under the FDCPA for adding "'collection fees' that exceeded limitations imposed by state laws").

Defendant's reliance on Turner v. Cook, 362 F.3d 1219 (9th Cir. 2004), and Shorts v. Palmer, 155 F.R.D. 172 (S.D. Ohio 1994), is misplaced. Both of those cases held that damages arising out of tort actions do not fall into the FDCPA's definition of "debt." The underlying dispute here was not about tort liability, but about contractual arrangements between landlords and tenants. Residential rental agreements creating an obligation to pay may constitute consumer transactions,[1] whereas tort interactions generally do not. Turner and Shorts thus have

---

[1] See Goldman v. Cohen, 445 F.3d 152 (2d Cir. 2006); Romea v. Heiberger & Assocs., 163 F.3d 111 (2d. Cir. 1998). In Cook v. Hamrick, 278 F.Supp. 2d 1202, 1204-05 (D. Colo. 2003), the district court concluded that an eviction action under a lease does not constitute a consumer transaction, but suggested that a suit for back rent may qualify. See id. at 1205 (the circuits "are in agreement that a

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS - 5

little bearing on the issue at hand.

### b. Litigation Privilege

Loeffler contends that litigation activities are not subject to the FDCPA. He argues that the common law litigation privilege shields actions taken during the course of judicial proceedings. The litigation privilege grants attorneys absolute immunity from civil liability for "statements or conduct that may have injured, offended, or otherwise damaged an opposing party during the litigation process." T. Leigh Anenson, Absolute Immunity from Civil Liability: Lessons for Litigation Lawyers, 31 Pepp. L. Rev. 915, 916 (2004). Washington recognizes this immunity: "Allegedly libelous statements, spoken or written by a party or counsel in the course of a judicial proceeding, are absolutely privileged if they are pertinent or material to the redress or relief sought, whether or not the statements are legally sufficient to obtain that relief." McNeal v. Allen, 95 Wn.2d 265, 267 (1980). The privilege extends to allegations made in pleadings. Id.

How the federal FDCPA relates to the state-based litigation privilege has been an issue of considerable dispute in the courts and remains unresolved in the Ninth Circuit. In 1986, Congress repealed language from the FDCPA that had exempted attorneys from its provisions. See 100 Stat. 768, Pub. L. No. 99-361 (1986). Then in 1995, the Supreme Court held that the definition of "debt collector" under the FDCPA includes "lawyer[s] who 'regularly,' *through litigation*, tr[y] to collect consumer debts." Heintz v. Jenkins, 514 U.S. 291, 292 (1995) (emphasis in original). However, the Court did not address for which activities or communications litigators may be liable; since that time, the courts of appeals have split over

---

'debt' is created only when a transaction creates an obligation to pay."). In the present case, the complaint does not indicate whether the original state court actions involved demands for back rent. The state court record, however, makes clear that both Medialdea and the Barringers were sued for back rent. Dkt. #21, Ex. 2 at 4; Dkt. #20, Ex. 2 at 4.

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS - 6

how to handle that issue. The Eleventh Circuit has refused to apply the FDCPA to judicial proceedings, at least with regard to "initial communications" under § 1692g. See Vega v. McKay, 351 F.3d 1334, 1337 (11th Cir. 2003). All other federal courts of appeals that have considered the issue have recognized that the FDCPA applies to litigation activities, and some have held explicitly that the FDCPA preempts the state litigation privilege. See, e.g., Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 231 (4th Cir. 2007) ("common law immunities cannot trump the [FDCPA's] clear application to the litigating activities of attorneys"); Goldman v. Cohen, 445 F.3d 152, 155 (2d Cir. 2006); Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 234 (3d Cir. 2005); Addison v. Braud, 105 F.3d 223, 224 n.1 (5th Cir. 1997).

The Court agrees that a proper reading of Heintz necessitates that some litigation activities are subject to the FDCPA. In Heintz, the Supreme Court held that "lawyer[s] who 'regularly,' *through litigation*, tr[y] to collect consumer debts" are included in the FDCPA's definition of "debt collector." Heintz, 514 U.S. at 292 (emphasis in original). That decision would be meaningless if there were no litigation-based way for those same "debt collectors" to violate the FDCPA. Furthermore, Heintz's reasoning indicates explicitly that the Court intended the FDCPA to apply not only to litigators but also to litigation activities. See, e.g., id. at 295 (rebutting the argument that "many of the [FDCPA's] requirements, if applied directly to litigating activities, [would] create harmfully anomalous results").

Furthermore, the enactment history of the FDCPA strongly suggests that Congress intended the FDCPA to apply to litigation activities. In 1996, after Heintz, Congress amended § 1692e(11), a provision that plaintiffs do not invoke, to exclude "formal pleading[s] made in connection with a legal action." 15 U.S.C. § 1692e(11), amended by Pub. L. No. 104-208, § 2305(A), 110 Stat. 3009, 3009-425 (1996). If litigation activities such as formal pleadings were exempt from all provisions of § 1692e, that amendment would have been unnecessary. "The

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS - 7

amendment by its terms in fact suggests that *all* litigation activities, *including* formal pleadings, are subject to the FDCPA, *except* to the limited extent that Congress exempted formal pleadings from the particular requirements of § 1692e(11)." Sayyed, 485 F.3d at 231 (emphasis in original).

### c. Plaintiffs' individual FDCPA claims

Plaintiffs claim that defendant's litigation activities violated 15 U.S.C. §§ 1692e-1692f. Compl. § 7. Section 1692e prohibits debt collectors from using "false, deceptive, or misleading representation or means in connection with the collection of any debt." Id. § 1692e. Plaintiffs assert that defendant "threatened to take action that cannot legally be taken," in violation of § 1692e(5).[2] Compl. ¶¶ 7.5, 7.8. However, plaintiffs fail to make any factual allegations to support that claim. The only allegations in the complaint that could possibly be construed as threats are defendant's lawsuits themselves. Yet those suits were not threats but actions, and defendant's clients had a legal right to pursue them. See Heintz, 514 U.S. at 296 ("[W]e do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'"). Because plaintiffs' § 1692e(5) claims are merely "formulaic recitation[s] of the elements of a cause of action," Twombly, 550 U.S. at 555, the Court dismisses them without prejudice.

Plaintiffs also assert that defendant violated § 1692f, which prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." Compl. ¶¶ 7.10-7.12. However, as with the § 1692e(5) claim, plaintiffs fail to allege any facts in support of that claim. The filing of a lawsuit alone is neither unfair nor unconscionable. Indeed, a non-frivolous lawsuit seems to be one of the most fair means of collecting a debt. Moreover, a legal motion is

---

[2] The § 1692e(2) claims presented by plaintiff Medialdea and plaintiffs Tye and Jennifer Barringer will be discussed separately below.

the most common means to recover attorney's fees and costs from an opposing party in the aftermath of a lawsuit. Plaintiffs contend that defendant violated § 1692f(1), which prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). However, plaintiffs do not allege that defendant actually collected any amounts in excess of what was awarded by the state court. To the extent plaintiffs seek to revisit the state court's determination that certain costs and fees awarded to defendant are valid, the Court rejects their attempt to appeal the state court decision through an FDCPA action. The Court therefore dismisses the § 1692f claims without prejudice.

## Medialdea

The complaint recites various facts related to plaintiff Dena Medialdea, Compl. at 7, however those facts do not always correspond with the state court record. According to the complaint, on February 12, 2008, Mr. Loeffler filed a motion and declaration in the Snohomish County Superior Court requesting $500 in attorney's fees and $50 for the costs of service of process. Compl. ¶ 5.2. The complaint further alleges that on February 27, 2008, Mr. Loeffler filed a "Declaration of Evan L. Loeffler in Support of Award for Attorneys' Fees and Costs" with the state court in which he "admitted that his attorney fees incurred on or before [] February 12, 2009 [sic] were not [$500] but instead only [$310]." Id. ¶¶ 5.4, 5.5. An examination of the state court record, however, reveals that the complaint requested only $400 in attorney's fees. Dkt. #21, Ex. 2, "Complaint for Unlawful Detainer" at 2. Moreover, the state court docket reveals no "Declaration of Evan L. Loeffler in Support of Award for Attorneys' Fees and Costs" filed on February 27, 2008. See Dkt. #21, Ex. 1 at 2. The record does indicate that such a declaration was filed on June 2, 2008, see Dkt. #21, Ex. 34, but nowhere in that document does defendant Loeffler "admit" that his fees "incurred on or before [] February 12, 2009" totaled $310.

A pleading must contain "a short and plain statement of the claim showing that the

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS - 9

pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). While the Court could perhaps splice together the various state court documents to approximate the facts plaintiffs were trying to allege in order to support their claim, the Court sees no reason to expend the time and resources necessary to fill in the gaps and correct the errors of a complaint drafted by counsel. Only *pro se* plaintiffs would receive the benefit of such an "inartfully pleaded" complaint. Jones v. Comty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984) (quoting Hughes v. Rowe, 449 U.S. 5, 9 (1980)). Accordingly, plaintiff Medialdea's FDCPA claims with respect to defendant Loeffler's request for attorney's fees are dismissed without prejudice.

The record does indicate that defendant Loeffler requested $50 for reimbursement of service of process fees. The complaint alleges that this cost is not allowed by Washington law because the process server was not registered. Compl. ¶ 5.7. On February 27, 2008, the Court Commissioner of the Snohomish County Superior Court awarded Mr. Loeffler the $50 service cost, Dkt. #21, Ex. 12 at 3, but upon Ms. Medialdea's motion for revision of that decision, see Dkt. #21, Ex. 14, the state court denied reimbursement of the service cost "as [Mr. Loeffler] could not prove [the] server was certified," Dkt. #21, Ex. 35.

Section 1692e(2) prohibits the "false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2); Compl. ¶¶ 7.2-7.3, 7.7. Under the reasoning in Heintz, plaintiff Medialdea does state a claim that, in requesting a $50 service cost that was later denied, defendant's "'representation' about the 'amount' of her 'debt' was 'false' . . . and thus violated the [FDCPA]." Heintz, 514 U.S. at 293-94 (quoting 15 U.S.C. § 1692e(2)(A)). Similarly, plaintiff Medialdea's allegation that defendant's demand for utilities

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS - 10

costs of $582.06, which the state court also rejected,[3] states a claim under § 1692e(2) as well. In Heintz, the plaintiff brought an FDCPA suit against her bank's law firm, alleging that the amount listed in the firm's settlement letter for $4,173 owed for insurance was false. 514 U.S. at 293. The Supreme Court held that the FDCPA does apply to lawyers engaged in litigation, id. at 294, and affirmed the Seventh Circuit's holding that "if the facts are as Jenkins contends – that Heintz and his law firm knew the insurance charge was unauthorized, but tried to pass it off anyway – then she states a claim," Jenkins v. Heintz, 25 F.3d 536, 540 (7th Cir. 1994). Bound by the Supreme Court's holding, the Court finds that plaintiff Medialdea has stated a claim under § 1692e with respect to the $50 service cost and the $582.06 utilities cost sought by defendant in the state court proceedings.[4]

---

[3] The state court did "not mak[e] any ruling on whether such amounts are due or not. There was no evidence timely presented on this issue. This ruling shall not prohibit [Mr. Loeffler] from seeking these amounts, if due, in another case or in another forum. There is no estoppel on the issue of unpaid utilities." Dkt. #21, Ex. 36 at 3.

[4] The Court does, however, have serious concerns that the Heintz holding has in fact created "harmfully anomalous results," Heintz, 514 U.S. at 295. The petitioner in Heintz argued that, were the FDCPA to apply to litigating activities, § 1692e(5) forbidding a "debt collector" from making any "threat to take action that cannot legally be taken" would make liable any lawyer who brought and then lost a claim against a debtor. Id. The Supreme Court found this reading unrealistic; "we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'" Id. at 296. While the Court agrees that a lawsuit cannot be challenged under § 1692e(5), the application of the FDCPA to litigating activities leaves open the possibility that any lawyer who requests a certain sum that is either decreased or denied by a court may later be sued for falsely representing the character or amount of the debt under § 1692e(2). In other words, "the fact that a lawsuit [or attorney's fees motion] turns out ultimately to be unsuccessful," id., could, by itself, leave the attorney vulnerable to an FDCPA suit. Nor does § 1692k(c) cure the problem. The Supreme Court found that any anomalies were mitigated by the provision stating that a "debt collector" may not be held liable if he 'shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); Heintz, 514 U.S. at 295. Even if there is a way for an attorney who has filed an attorney's fees motion in good faith and lost to escape liability, placing the burden on him to prove that he did not intentionally misrepresent the amount of the debt imposes a potentially hefty cost to filing a rather routine motion. But see 15 U.S.C. § 1692k(a)(3)

Barringers

The facts related to plaintiffs Tye and Jennifer Barringer allege that defendant's complaint for unlawful detainer demanded $140 for late fees "which were an amount not allowed by law or contract." Compl. ¶ 6.3. The complaint further alleges that defendant unlawfully declared a service fee cost of $49 even though his process server was not registered. Id. ¶ 6.6, 6.10. While the precise basis for each claim is unclear, the complaint alleges that either or both of these acts violates § 1692e(2)(A) and (B). Id. ¶ 7.3.[5]

The state court record reveals that on January 14, 2008, Mr. Loeffler filed a summons and complaint for unlawful detainer on his client's behalf against the Barringers. Dkt. #20, Ex. 2. The complaint sought, among other things, $140 in late fees. Id. at 4. That same day, Mr. Loeffler filed a motion for an order of default requesting various costs including a $49 service fee. Dkt. #20, Ex. 4 at 2. The Court Commissioner issued a default judgment awarding Mr. Loeffler the costs and fees he requested. Dkt. #20, Ex. 5 at 1. Two months later, the Barringers filed a motion to set aside the default judgment through their counsel Mr. Peterson. Dkt. #20, Ex. 8. On May 8, 2008, the Court Commissioner denied the motion to set aside. Dkt. #20, Ex. 25. The state court docket does not indicate that the Barringers appealed the denial of their motion. See Dkt. #20, Ex. 1.

Plaintiffs' attempt to re-litigate their state court case via a federal FDCPA suit fails. In

---

("On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."). Especially when that motion has been heard by a judicial officer who has determined the fair amount of the debt, the application of the FDCPA to litigating activities seems to miss the FDCPA's target of "abusive debt collection practices," 15 U.S.C. § 1692(e). Cf. Jenkins v. Heintz, 25 F.3d 536, 538 (7th Cir. 1994) ("Obviously, Congress did not intend to eliminate all debt collection practices, only those which it considered unfair.").

[5] To the extent plaintiffs allege that either or both of these acts violate § 1692f, those claims have already been addressed and dismissed above.

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS - 12

order to prevail on a § 1692e(2) claim, the character or amount of the debt, 15 U.S.C. § 1692e(2)(A), or the services rendered or compensation which may be lawfully received, id. § 1692e(2)(B), must have been falsely represented to the debtor. The state court's determination that Mr. Loeffler was entitled to those amounts proves that his representation of the debt was accurate. Plaintiffs cannot use the FDCPA to collaterally attack or appeal that determination. Because the claims presented in federal court "'depend[] on issues identical to those that [have] . . . been resolved in the state-court action,'" plaintiffs are precluded from raising those claims here. Manufactured Home Communities Inc. v. City of San Jose, 420 F.3d 1022, 1032 (9th Cir. 2005) (quoting San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 326-27 (2005)). Therefore, plaintiffs Tye and Jennifer Barringer's FDCPA claims are dismissed without prejudice.

**2. Consumer Protection Act ("CPA")**

Plaintiffs assert that defendant's litigation activities violated the CPA, RCW 19.86. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. It allows "any person who is injured in his or her business or property by a violation of RCW 19.86.020 . . . [to] bring a civil action . . . to enjoin further violations, to recover actual damages . . . , or both." RCW 19.86.090. "[T]o prevail in a private CPA action . . . , a plaintiff must establish five distinct elements: (1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) [a] public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986). activities from the CPA. Because plaintiffs' CPA claim fails to satisfy the requirements of Hangman Ridge, it is dismissed.

Regarding the "trade or commerce" requirement, plaintiffs rely primarily on Short v. Demopolis, 103 Wn.2d 52 (1984), to argue that the CPA applies to misrepresentations of

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS - 13

attorney's fees in motions before the courts.  Short involved a dispute between an attorney and his client, where the client claimed that the attorney had failed to meet his contractual obligations.  The Washington Supreme Court held that "trade or commerce" under the CPA includes "certain entrepreneurial aspects of the practice of law."  Short, 103 Wn.2d at 60.  However, the court noted that it did not decide "whether the CPA applies to every aspect of the practice of law . . . as to the performance of legal services."  Id. at 66.  Additionally, in concurrence, Justice Williams stated emphatically that the "novel[ty]" of the application of the CPA to legal services required that Washington courts "proceed cautiously in applying it to different factual situations."  Id. at 68 (Williams, J., concurring).

The facts of this case are easily distinguished from those of Short.  Defendant's attorney's fees and costs were certainly part of the entrepreneurial aspect of his practice, but that does not necessarily mean that his alleged misrepresentations of those fees and costs to the Snohomish County Superior Court constituted actions taken "in the conduct of" trade or commerce.  RCW 19.86.020.  In Short, the attorney misrepresented his services to his client, someone with whom he was engaged in commercial activity.  Here, plaintiffs make no allegation that defendant misrepresented his fees and costs to his own clients; rather, they allege that his misrepresentations were to the superior court.  The Court holds that a court proceeding does not constitute "trade or commerce" under the CPA.  The dearth of Washington case law on the applicability of the CPA to judicial proceedings only supports this conclusion.

Regarding damages, plaintiffs assert opaquely that "[t]he Defendants [sic] violation of the FDCPA has caused actual Damages to the Plaintiffs," Compl. ¶ 7.13, and that "[t]he Defendants [sic] actions were the direct cause of injury to plaintiff's property," id. ¶ 8.8.  Their allegations do not include any specific injury to their business or property[6] and amount to a "formulaic

---

[6] "[M]ental distress, embarrassment and inconvenience alone do not establish injury."  Stephens v. Omni Ins. Co., 138 Wn. App. 151, 180 (2007).

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS - 14

recitation of the elements" of the CPA cause of action. See Twombly, 550 U.S. at 555. Moreover, plaintiffs' allegations preclude the possibility of actual damages. The theory behind this action is that defendant overcharged for his fees and costs, and the basis for the allegations is that the superior court found as much and reduced Mr. Loeffler's awards accordingly. See Dkt #13 at 11. Plaintiffs concede that they paid no more than the amount that the court found was appropriate, id.; consequently, they could not have suffered any actual damages. The Court therefore dismisses plaintiff's CPA claim without prejudice.

### III. CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part. The Court DISMISSES WITHOUT PREJUDICE all plaintiffs' claims under § 1692e(5) and § 1692f of the FDCPA and plaintiffs Tye and Jennifer Barringer's claims under § 1692e(2) of the FDCPA. The Court DISMISSES WITHOUT PREJUDICE plaintiffs' CPA claim.

DATED this 19th day of June, 2008.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge