1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
7                              AT SEATTLE
8
9   DENA MEDIALDEA, *et al.*,

10             Plaintiffs,

11        v.                                    No. C09-55RSL

12   LAW OFFICE OF EVAN L LOEFFLER              ORDER GRANTING MOTIONS FOR
     PLLC, *et al.*,                           SUMMARY JUDGMENT
13
               Defendants.
14

15

16                           **I.  INTRODUCTION**

17        This matter comes before the Court on "Defendants Law Office of Evan L. Loeffler,

18   PLLC and Evan L. Loeffler's Motion for Summary Judgment," Dkt. #26, and "Defendant

19   Joehncks' Motion for Summary Judgment," Dkt. #28.  After the Court's June 19, 2009 order

20   granting in part defendant Loeffler's motion to dismiss, Dkt. #22, only two claims remain from

21   plaintiff's complaint against defendant Loeffler, id. at 10-11.  Defendant Loeffler now seeks

22   summary judgment on those remaining claims.  Defendants Thomas and Patti Joehnck also move

23   for summary dismissal of all claims against them because they "are not 'debt collectors,' never

24   communicated with Plaintiffs herein, and Plaintiffs have not been damaged by any conduct of

25

26   ORDER GRANTING MOTIONS FOR
     SUMMARY JUDGMENT - 1

the Joehncks." Dkt. #28 at 1. For the reasons set forth below, the Court grants both summary judgment motions.

## II. DISCUSSION

**A. Background**[1]

On February 1, 2008, Josepha and Molly Rombach, landlords of a property rented by Ms. Medialdea, served Ms. Medialdea with a notice demanding overdue rent. The notice also indicated that Ms. Medialdea had failed to pay other outstanding obligations in the amount of $582.06. On February 2, 2008, Ms. Medialdea was served with a Summons and Complaint for Unlawful Detainer. Dkt. #21, Ex. 2. Attorney Scott Peterson appeared in the case on behalf of Ms. Medialdea ten days later. Dkt. #21, Ex. 6. Although the superior court originally awarded the Rombachs damages for $2,700 in unpaid rent and $582.06 for unpaid utilities, Dkt. #21, Ex. 12, upon reconsideration it rejected the Rombachs' claim for unpaid utilities without "making any ruling on whether such amounts are due or not," Dkt. #21, Ex. 36 at 3. According to defendant Loeffler, it was determined that the Rombachs would sever their claim for utility fees and would pursue the outstanding utility bill in small claims court, which they did. Loeffler Decl., Dkt. #27 ¶¶ 11-12.

On June 2, 2008, Mr. Loeffler, counsel for the Rombachs, filed an attorney's fees motion, Dkt. #21, Ex. 33, in which he sought reimbursement for a $50 service fee, id. at 3. On June 11, 2008, the superior court found Ms. Medialdea liable for unlawful detainer, Dkt. #21, Ex. 36, and awarded attorney fees and costs to the Rombachs, Dkt. #21, Ex. 37. The court did not allow reimbursement of the $50 service fee. Compl., Dkt. #1 ¶ 5.17.

---

[1] Defendant Loeffler has offered background facts that were not included in plaintiff's complaint but which plaintiff does not refute in her response brief. These facts are also supported by the state court record, Dkt. #21.

Meanwhile, on January 14, 2008, Tye and Jennifer Barringer were sued in superior court for unlawful detainer and past rent due. Id. ¶ 6.1. Mr. Loeffler represented the plaintiff in that suit as well. Id. The complaint demanded $140 for late fees, and amount allegedly "not allowed by law or contract." Id. ¶ 6.3. The person who served process on the Barringers was not registered as a process server in Snohomish County. Id. ¶ 6.6. According to the complaint, Mr. Joehnck, who is not a lawyer, claimed that he was a "law clerk" of the Law Office of Evan L. Loeffler PLLC and brought the motion seeking default judgment against the Barringers to the superior court. Id. ¶ 6.9. This motion, signed by both Mr. Loeffler and Mr. Joehnck, declared that a "service fee" of $49 was incurred. The Court Commissioner issued a default judgment awarding Mr. Loeffler the costs and fees he requested. Dkt. #20, Ex. 5 at 1. Two months later, the Barringers filed a motion to set aside the default judgment through their counsel Mr. Peterson. Dkt. #20, Ex. 8. On May 8, 2008, the Court Commissioner denied the motion to set aside. Dkt. #20, Ex. 25. The state court docket does not indicate that the Barringers appealed the denial of their motion. See Dkt. #20, Ex. 1.

On January 14, 2009, Ms. Medialdea and the Barringers filed suit in federal court, claiming that defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and Washington's Consumer Protection Act ("CPA"), RCW 19.86, during the course of the litigation over attorney's fees and costs. Upon defendant Loeffler's motion to dismiss, Dkt. #5, the Court dismissed all claims brought by the Barringers, Dkt. #22 at 15, and all but two claims brought by plaintiff Medialdea, id. at 10-11.

**B. Analysis**

Rule 56 provides that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden "to show initially the absence of a genuine issue

concerning any material fact," <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986) (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159 (1970)), and all evidence must be viewed in the light most favorable to the nonmoving party, <u>Hawkins v. United States</u>, 30 F.3d 1077, 1079 (9th Cir. 1994). Once the moving party makes the required showing, the burden shifts to the nonmoving party to come forward with sufficient evidence to demonstrate that there is a triable issue of fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256-57 (1986).

**1. Loeffler's Summary Judgment Motion**

The only remaining claims against defendant Loeffler include plaintiff Medialdea's allegations that defendant violated 15 U.S.C. § 1692e(2) by seeking reimbursement on behalf of his client in the amounts of $50 for an unregistered process server and $582.06 for unpaid utilities.[2] This provision of the FDCPA prohibits "[t]he false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2).

**a. Process Server Fee**

Plaintiff contends that defendant Loeffler violated this provision by seeking a $50 reimbursement for an unregistered process server in his motion for attorney's fees. Compl., Dkt. #1 ¶¶ 5.4 - 5.17. But as this motion was served upon plaintiff's attorney, not directly to plaintiff, defendant Loeffler is entitled to summary judgment on this issue. In <u>Guerrero v. RJM Acquisitions LLC</u>, 499 F.3d 926 (9th Cir. 2007), the Ninth Circuit held that "when the debt

---

[2] Plaintiff's suggestion that the Court did not dismiss her claims brought under 15 U.S.C. § 1692f, Dkt. #37 at 1-2, ignores the plain language of the Court's prior order, <u>see</u> Dkt. #22 at 8 ("Plaintiffs also assert that defendant violated § 1692f, . . . [however] plaintiffs fail to allege any facts in support of that claim."); <u>id.</u> at 12 n.5 ("To the extent plaintiffs allege that either or both of these acts violate § 1692f, those claims have already been addressed and dismissed above."); <u>id.</u> at 15 ("The Court DISMISSES WITHOUT PREJUDICE all plaintiffs' claims under § 1692e(5) and § 1692f of the FDCPA[.]").

collector ceases contact with the debtor, and instead communicates exclusively with an attorney hired to represent the debtor in the matter, the [FDCPA's] strictures no longer apply to those communications," id. at 939. The Ninth Circuit noted that "it appears that Congress viewed attorneys as intermediaries able to bear the brunt of overreaching debt collection practices from which debtors and their loved ones should be protected. Id. at 935; see also id. at 939 ("When an individual is represented by counsel who fields all communications relevant to the debt collection, these concerns [about harassment and intimidation] quickly evaporate. Attorneys possess exactly the degree of sophistication and legal wherewithal that individual debtors do not.").

Plaintiff's attempt to distinguish the present case from Guerrero is unavailing. While the communication in Guerrero was a letter directed exclusively to the attorney, id. at 934, the communication in the present case was a motion filed with the superior court and served on plaintiff's attorney. But Guerrero's holding is not limited to private letters from a debt collector to a debtor's counsel; rather, it broadly suggests that "attorneys [are not] as susceptible to the abuses that spurred the need for the legislation to begin with," id. at 935. Plaintiff contends that "[f]iling documents which misrepresent and inflate the amount due in an attempt to obtain a judgment is a violation of the FDCPA. Otherwise all litigation activities of attorneys against represented debtors would be outside of the FDCPA." Dkt. #37 at 6-7. But this alternative is not prohibited by prevailing law. Under Guerrero, any communications sent directly to a debtor are subject to the FDCPA, as are any communications filed in court which are served upon unrepresented debtors.[3] Heintz v. Jenkins, 514 U.S. 291 (1995), does not preclude Guerrero's

_____

[3] In an onslaught of prepositional phrases, plaintiff contends that "[a]ny logic that would support the preclusion of application of the FDCPA based on the fact of representation by the debtor by an attorney in the litigation activities in a pending collection case would apply even more so to the role of the state court judge." Dkt. #37 at 7. But a judge is not an "intermediar[y]" for a litigant, nor is she

narrow reading of the FDCPA's application to represented debtors. In holding that "lawyer[s] who 'regularly,' *through litigation*, tr[y] to collect consumer debts" are included in the FDCPA's definition of "debt collector," 514 U.S. at 292 (emphasis in original), <u>Heintz</u> did not indicate that all litigation activities are covered under the FDCPA. Moreover, while the communication in <u>Heintz</u> "happened to be sent to a debtor's counsel," <u>Guerrero</u>, 499 F.3d at 937 (citing <u>Heintz</u>, 514 U.S. at 293), "neither the Court nor the parties addressed the issue" confronted in <u>Guerrero</u>, <u>id.</u> at 937-38, and therefore <u>Heintz</u> offers no "precedential holdings" on this "non-litigated issue[]," <u>id.</u> at 938 (quoting <u>Sakamoto v. Duty Free Shoppers, Ltd.</u>, 764 F.2d 1285, 1288 (9th Cir. 1985)).

The Court need not hold that "practices forbidden by the statute" are automatically "immuniz[ed] . . . when they are directed against a consumer's lawyer," <u>Evory v. RJM Acquisitions Funding L.L.C.</u>, 505 F.3d 769, 774 (7th Cir. 2007). Rather, an understanding of the purposes behind the FDCPA suggests that "the standard for determining whether particular conduct violates the statute is different when the conduct is aimed at a lawyer than when it is aimed at a consumer." <u>Id.</u>

> Since . . . most lawyers who represent consumers in debt-collection cases are knowledgeable about the law and practices of debt collection, since those who are not should be able to inform themselves sufficiently to be able to represent their consumer clients competently, and since the debt collector cannot be expected to know how knowledgeable a particular consumer's lawyer is, . . . a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable.

<u>Id.</u> at 774-75. There is no indication from the evidence before the Court that defendant Loeffler's representation of the $50 service fee for an unregistered process server would be likely to deceive a competent lawyer, or that plaintiff's lawyer was in fact deceived.

---

charged with "protect[ing]" a litigant in the same manner as is a litigant's attorney. <u>See Guerrero</u>, 499 F.3d at 935.

Therefore, plaintiff's §1692e(2) claim regarding the $50 process server fee fails as a matter of law.

### b. Utility Fees

Plaintiff Medialdea alleges that defendant Loeffler violated § 1692e(2) by seeking to recover $582.06 for utilities "which were not allowed by law or contract." Compl. ¶ 5.18. However, defendant Loeffler presents evidence that plaintiff did owe that amount for utilities, see Dkt. #21, Ex. 12 at 2, in accordance with a lease she herself drafted that provided that payment of utility fees would be recoverable in any action for unpaid rent, see Dkt. #21, Ex. 10 ¶¶ 3, 8; Dkt. #21, Ex. 31 at 90-91. Indeed, defendant Loeffler attests that plaintiff agreed to pay the money for utilities after the Rombachs filed an action in small claims court. Loeffler Decl. ¶ 12. Plaintiff does not dispute these facts.

Because plaintiff has failed to present any evidence that the "character, amount, or legal status" of the unpaid utility bills represented by defendant Loeffler was "false," 15 U.S.C. § 1692e(2)(A), her FDCPA claim regarding the $582.06 is dismissed. There is no FDCPA violation where representation of a debt is accurate and collection of that debt is authorized by an agreement between the debtor and her creditor.

### c. Injunctive Relief

Although defendant Loeffler indicates that plaintiff Medialdea also requests injunctive relief, Dkt. #26 at 5, plaintiff concedes that her "claim for injunctive relief was based upon the state law claim that has been dismissed," Dkt. #37 at 1 n.1. Even if plaintiff's claims for injunctive relief were before the Court, they would be denied as "[e]quitable relief, such as an injunction, is not available in [FDCPA] actions," Campion v. Credit Bureau Servs., Inc., 206 F.R.D. 663, 678 (E.D. Wash. 2001) (citing Sibley v. Fulton DeKalb Collection Serv., 677 F.2d 830, 834 (11th Cir. 1982)); see also 15 U.S.C. § 1692k (providing for monetary relief under the

FDCPA).

**2. Joehncks' Motion for Summary Judgment**

Thomas and Patti Joehnck seek summary dismissal of plaintiffs' claims against them. Dkt. #28. The basis of plaintiffs' claims against the Joehncks is rather unclear. The complaint alleges that Mr. Joehnck is a "debt collector" under the FDCPA, was attempting to collect a debt, and is not licenced to practice law in the State of Washington. Compl. ¶¶ 3.17 - 3.20. The Court finds that summary judgment in favor of the Joehncks is appropriate on several grounds.

Plaintiff Medialdea alleges that Mr. Joehnck prepared the Notice to Pay Rent which she was served. Dkt. #40 at 8. But this notice was not the basis for the allegedly improper service charge plaintiff asserts in the complaint. Indeed, in the portion of the complaint entitled "Facts Related to Plaintiff Dena Medialdia" [sic], Compl. ¶ 5, Mr. Joehnck's name is not even mentioned. Instead, a person named Angelo Ortiz, who is not named as a defendant, served the complaint for unlawful detainer upon plaintiff, id. ¶ 5.1, even though he was not registered as a process server with the County Auditor. Plaintiff's counsel's "inartfully pleaded" complaint, see Dkt. #22 at 10 (quoting Jones v. Comty. Redev. Agency of L.A., 733 F.2d 646, 649 (9th Cir. 1984)), gives no indication of the extent to which Mr. Joehnck has any connection to plaintiff Medialdea's FDCPA or CPA claims.

Even assuming plaintiff Medialdea claims that Mr. Joehnck violated the FDCPA by trying to procure a process server fee through defendant Loeffler's attorney's fees motion, this claim fails for the same reasons as does the claim against defendant Loeffler. See supra Part II.B.1.a. To the extent plaintiff Medialdea claims that Mr. Joehnck unlawfully served her a complaint seeking $582.06 in utilities, not only has the Court found that this amount was not "false" under § 1692e(2), but also Mr. Joehnck is not a "debt collector" under the FDCPA. See 15 U.S.C. § 1692a(6)(D) ("The term does not include . . . any person while serving or attempting

to serve legal process on any other person in connection with the judicial enforcement of any debt."). Additionally, any CPA claims plaintiff Medialdea alleges against Mr. Joehnck have already been dismissed by the Court. In its prior order, the Court indicated that plaintiff Medialdea has not established that she was injured by any allegedly deceitful practices as the superior court denied the request for process server costs. Dkt. #22 at 15; see also Compl. ¶ 5.17.

With regard to the Barringers,[4] the complaint alleges that Mr. Joehnck presented a motion and order for default judgment to the Court Commissioner while claiming to be a "law clerk" on behalf of the Law Office of Evan L. Loeffler PLLC. Compl. ¶ 6.11. According to the complaint, "[i]n order to increase profits, Evan Loeffler and Loeffler LLC enabled and allowed Thomas Joenck [sic] to engage in the unlicensed practice of law." Id. ¶ 6.12. But plaintiffs' response to the summary judgment motion contains no facts or evidence regarding the Barringers. It merely asserts that costs were "wrongly requested" in the Barringer matter and that the Barringers were damaged by the judgment entered for process server fees. Dkt. #40 at 11. Plaintiffs' brief also requests that the Barringers be allowed to deny the Joehncks' Requests for Admission, even though they failed to respond to the requests in a timely manner, because "Jennifer Barringer is out of town" and "Tye Barringer is in a different portion of the state, far from Everett." Id. at 9.[5] Plaintiffs have plainly failed to meet their burden on summary

---

[4] As far as the Court is concerned, all of the Barringers' claims were dismissed as part of the previous order, Dkt. #22. Plaintiffs' counsel, however, briefly addresses the claims made by the Barringers in his response brief, suggesting that these claims are still at issue. Assuming these claims are still viable, the Court addresses them in this Order.

[5] The Joehncks indicate that, on June 19, 2009, their counsel served Requests for Admission upon plaintiffs' counsel, but that plaintiffs filed no responses or objections within thirty days. Dkt. #28 at 8. Plaintiffs address these requests for the first time in their response brief, filed on August 31, 2009. Plaintiffs ask the Court to exercise its discretion to lengthen the time in which they must respond, Dkt. #40 at 9, but plaintiffs have provided no justification for the delay.

1  judgment.

2      Even if the Court were to entertain the Barringers' claim against Mr. Joehnck under the

3  FDCPA and the CPA, the Court is unwilling to disrupt the determination of the superior court.

4  In their motion to set aside the default judgment, the Barringers argued that the judgment should

5  be vacated because Mr. Joehnck falsely represented himself as a "law clerk." Dkt. #20, Ex. 8 at

6  8-9. The superior court denied the motion. Dkt. #20, Ex. 25. The Court will not allow plaintiffs

7  to use the FDCPA or CPA to collaterally attack or appeal the superior court's determination.

8      The bulk of plaintiffs' response to the Joehncks' summary judgment motion addresses

9  Mr. Joehnck's statements that he was previously represented by Mr. Peterson and that Mr.

10  Peterson had instructed him on how to properly serve documents. See Thomas Joehnck Decl.,

11  Dkt. #30 ¶ 6 ("I believed my attorney would give me correct advice about the law, so I followed

12  both his written instructions and his example when he served process."). Plaintiffs' counsel

13  devotes nearly two-thirds of the response brief to Mr. Peterson's copyright infringement case

14  against Mr. Joehnck and Mr. Peterson's relationship with Mr. Joehnck's company. Dkt. #40 at

15  1-8. Plaintiffs' counsel asserts that Mr. Joehnck's "inconsistent prior statements" in prior

16  litigation "must concern this court" and "the factual issues related to the Joehncks own

17  inconsistent statements should be determined by a jury." Id. at 8. But in focusing on his own

18  relationship with defendants, plaintiffs' counsel seems to have missed the point of the present

19  lawsuit he has brought on behalf of his clients. The Court has little concern for Mr. Peterson's

20  copyright infringement case against the Joehncks; nor is the Court in any position to decide who

21  is to blame for Mr. Joehncks' failure to register as a process server or who is responsible for

22  drafting the templates for the documents that were ultimately served on plaintiffs.[6] The only

23

24

25      [6] Were there any indication that plaintiffs had a credible claim against any defendant, the Court
        would be inclined to explore whether Mr. Peterson should be disqualified due to a conflict of interests.

26

question before the Court is whether the Joehncks have violated the FDCPA or CPA in their conduct toward plaintiffs. Plaintiffs' counsel has devoted a mere eleven lines of argument to this issue. Id. at 8-9. In light of the paltry information and analysis put forth by plaintiffs on this motion and others, the Court discerns that the failure to address the issue at hand reveals a complete lack of evidence supporting plaintiffs' claims.

Therefore, plaintiffs' FDCPA and CPA claims against the Joehncks are dismissed.

### III. CONCLUSION

For all of the foregoing reasons, defendant Loeffler's motion for summary judgment (Dkt. #26) is GRANTED. Defendants Evan L. Loeffler, "Jane Doe" Loeffler[7] and Law Office of Evan L. Loeffler, PLLC are therefore dismissed. The Joehncks' motion for summary judgment (Dkt. #28) is also GRANTED. Defendants Thomas and Patti Joehnck are dismissed.

DATED this 2nd day of October, 2009.

_MWr S Lasnik_
Robert S. Lasnik
United States District Judge

---

[7] Defendant indicates that "Jane Doe" Loeffler does not exist. Dkt. #26 at 1 n.1.